2011 BNH 002

_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                              Bk. No. 09-14300-JMD
                                                    Chapter 13
Sean Doolan and
Nicole Doolan,
        Debtors


In re:                                              Bk. No. 07-12763-JMD
                                                    Chapter 13
Lori J. Gaff,
        Debtor

Lori J. Gaff,                                       Adv. No. 10-1053-JMD
        Plaintiff
v.

Town of Pembroke, New Hampshire,
        Defendant

*Michelle Kainen, Esq.*                             *Mary F. Stewart, Esq.*
*Kainen Law Office, P.C.*                           *Mary Stewart Law Firm, PLLC*
*White River Junction, Vermont*                     *Concord, New Hampshire*
*Attorney for Debtors Sean & Nicole Doolan*         *Attorney for Debtor/Plaintiff Lori Gaff*

*Steven A. Clark, Esq.*                             *Peter N. Tamposi, Esq.*
*Londonderry, New Hampshire*                        *The Tamposi Law Group*
*Attorney for Respondent Town of Derry*             *Nashua, New Hampshire*
                                                    *Attorney for Defendant Town of Pembroke*

*James F. Raymond, Esq.*                            *Bernard H. Campbell, Esq.*
*Upton & Hatfield, LLP*                             *Beaumont & Campbell Prof. Ass'n.*
*Concord, New Hampshire*                            *Salem, New Hampshire*
*Attorney for Intervener Town of Nottingham*        *Attorney for Intervener New Hampshire Tax*
                                                    *Collectors' Association*

## MEMORANDUM OPINION

### I.  INTRODUCTION

On May 4, 2010, Lori J. Gaff ("Gaff") filed a complaint against the Town of Pembroke ("Pembroke") claiming a violation of the automatic stay by Pembroke in sending various notices of impending tax liens and executing such liens.  On May 25, 2010, Sean and Nicole Doolan ("Doolans") (the "Debtors" when referred to collectively with Gaff) filed a Motion for Contempt and Sanctions for Violation of the Automatic Stay by the Town of Derry ("Derry") (the "Towns" when referred to collectively with Pembroke) based upon similar conduct by Derry with respect to real estate tax liens.  In response to the Doolans' motion, the Town of Nottingham ("Nottingham") moved to intervene in the matter and the Court granted its motion.  On August 25, 2010, this Court granted a motion to join the Doolans' contested matter with Gaff's adversary proceeding regarding common issues of law and fact.  On September 18, 2010, Gaff filed a Motion for Summary Judgment in her adversary proceeding, and after argument, the Court took the motion under advisement.  On October 8, 2010, the New Hampshire Tax Collectors' Association ("NHTCA") moved to intervene and be heard under Bankruptcy Rule 2018 and the Court granted the motion.  The facts in these cases, pertaining to delinquent property taxes and the tax lien procedures followed by the Towns, are not in dispute.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.    THE LEGAL LANDSCAPE

These cases arise at the intersection of state law regarding the assessment and collection of real estate taxes and federal bankruptcy laws for the protection of debtors and the equitable payment of claims.

### A.    Applicable Non-bankruptcy Law

The assessment and collection of real estate taxes in New Hampshire is governed by state law.  Real estate taxes are assessed on an annual basis where "[t]he property tax year [is] April 1 to March 31 and all property taxes [are] assessed on the inventory taken in April of that year." NH RSA 76:2.  The obligation to pay the property taxes falls not on the owner's equity in the property, but on the property itself.  NH RSA 80:19; First NH Bank v. Town of Windham, 138 N.H. 319, 321 (1994).  Accordingly, on April 1 of each year, an inchoate lien to secure property taxes arises on real estate by operation of law.  Id.  The lien has priority over all other prior or subsequent liens on the property, but only continues for eighteen months, and expires on October 1 of the calendar year following the beginning of the tax year.  Id.; NH RSA 80:19.

Real estate taxes are assessed against the owner of record on April 1.  NH RSA 76:10. The tax is generally collected over two semi-annual payments.  NH RSA 76:15-a.  The first partial payment, which is 50% of the previous year's tax, is payable July 1 and the final payment is due December 1.[1]  Id.  If the payment of either installment is not made on or before the due date, interest at the rate of twelve percent is charged.[2]  NH RSA 76:13.  Where a property owner

---

[1]  Optional procedures are available for municipalities that budget on a fiscal year of July 1 to June 30, rather than a calendar year.  NH RSA 76:15-c.  Optional procedures are also available for towns that wish to bill real estate taxes on a quarterly basis.  NH RSA 76:15-a. Neither of the Towns budget on a fiscal year or bill real estate taxes quarterly.

[2]  Interest on unpaid taxes may not be imposed until thirty days after the last bill is mailed.  NH RSA 76:13 and 76:15-a.

does not make payments by the due date of the final installment, state law provides specific procedures for converting the statutory lien into an equitable interest and ultimately a legal interest. Windham, 138 N.H. at 321-22.

The tax collector is required to notify the owner of record as of April 1 of all uncollected and unredeemed real estate taxes on his property with the bill for the final installment, or within ninety days of the due date for the final tax bill. NH RSA 76:11-b. Eventually, if the property tax is not paid, state law requires the tax collector to follow certain procedures to execute a tax lien or else the inchoate lien will expire on October 1 of the year following assessment of the tax. Notice of the impending tax lien must be sent at least thirty days prior to executing the lien. NH RSA 80:60. The notice must be sent by certified or registered mail with a return receipt requested to the last known post office address of the current owner, if known, or to the person against whom the tax was assessed. Id. The notice must also contain the name of the current owner or the person against whom the tax was assessed, a description of the property, the date and time on which the last payment shall be accepted, and the amount of the tax, interest, and costs owed up to the date of execution. Id.

On the day following the last date for the payment of taxes stated in the notice, the tax collector must deliver to the municipality an affidavit of the execution of the tax lien. NH RSA 80:61. No less than thirty days after the execution of a tax lien to the municipality, the tax collector shall deliver to the registry of deeds for the county in which the real estate is located the facts stated in the notice of lien and the details regarding the execution of the lien, as required by law. NH RSA 80:64. The municipality is required, within forty-five days after the execution of the lien, to identify and notify all persons holding mortgages of record against the property. NH RSA 80:65. After two years from the date of execution of the tax lien, the tax collector may

4

execute a tax deed for the property subject to the tax lien.  NH RSA 80:76.  Any time prior to the delivery of a tax deed, a person with a legal interest in the property subject to the lien may redeem the property by paying the amount of the tax lien plus interest and costs prescribed by law.  NH RSA 80:69.  Failure to notify a mortgagee of record of the execution of the tax lien results in the interests of the mortgagee surviving the delivery of the tax deed.  Id.; Windham, 138 N.H. 319.

Compliance with the execution and notification requirements of the statutory tax lien procedure has two significant results for the municipality holding the lien.  First, the first priority lien for real estate taxes does not expire on October 1 following the tax year, but continues indefinitely, even if a tax deed is not delivered.  Id.; NH RSA 80:76.  Second, upon execution of the tax lien, the interest on the delinquent taxes increases from twelve to eighteen percent.  NH RSA 80:69.

### B.    Federal Bankruptcy Law

Upon the filing of a bankruptcy petition, § 362(a) of the Bankruptcy Code imposes an automatic stay against the commencement or continuation of any action or proceeding against a debtor to collect a prepetition debt.  The automatic stay provision of the Bankruptcy Code, § 362(a), has been described as "one of the fundamental debtor protections provided by the bankruptcy laws."  Midlantic Nat'l Bank v. New Jersey Dep't of Env't Protection, 474 U.S. 494, 503 (1986).  Its purpose is to give debtors breathing room and stop collection efforts on the day of filing.  Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 398 (1st Cir. 2002); In re 229 Main St. Ltd P'ship, 262 F.3d 1, 3 (1st Cir. 2001).

Specifically, § 362(a) of the Bankruptcy Code imposes a stay against:

> (4)  any act to create, perfect, or enforce any lien against property of the estate;
>
> (5)  any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; [and]
>
> (6)  any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 363(a)(4), (5), and (6).

Despite the importance of the automatic stay, Congress has enacted several exceptions to the stay that allow governmental units to take actions that protect the public interest in the collection of taxes.  Id.  Exceptions to the automatic stay are read narrowly.  Hillis Motors, Inc. v. Hawaii Auto. Dealers' Assoc., 997 F.2d 581, 590 (9th Cir. 1993).  However, exceptions to the stay may not be narrowly construed when they pertain to the exercise of police powers to protect public health and safety.  See Cournoyer v. Town of Lincoln, 790 F.2d 971, 976 (1st Cir. 1986). The present cases involve protection of the pecuniary interest of a governmental unit, not the protection of public health or safety.  In re McMullen, 386 F.3d 320, 325 (1st Cir. 2004). Accordingly, this Court shall construe exceptions to the automatic stay narrowly to effectuate the fundamental public policy of federal bankruptcy law to grant broad relief to the debtor.  Id.; Stringer v. Huet (In re Stringer), 847 F.2d 549, 552 (9th Cir. 1988).

6

The exceptions involved in these cases are provided in § 362(b) of the Bankruptcy Code:

(b) The filing of a petition . . . does not operate as a stay –

>    (3)  under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title . . .

>    (9)  under subsection (a), of . . .

>        (B) the issuance to the debtor by a governmental unit of a notice of a tax deficiency; [and]

>    (18) under subsection (a) of the creation or perfection of a statutory lien for an ad valorem property tax . . . imposed by a governmental unit, if such tax . . . becomes due after the date of the filing of the petition.

It is the scope of these exceptions, and the conduct of Derry and Pembroke, that are at issue in these cases.


## III.    DISCUSSION

In her Complaint and Motion for Summary Judgment, Gaff is seeking a ruling by the Court finding that Pembroke (1) willfully violated the automatic stay by sending a notice of delinquent taxes and executing a lien for the 2007 real estate taxes (Count I); (2) willfully violated the automatic stay by applying postpetition tax payments to prepetition obligations (Count II); and (3) is in contempt of the order confirming her chapter 13 plan by imposing and collecting interest on prepetition tax obligations in violation of the confirmed chapter 13 plan (Count III).  She is also seeking a hearing on damages, including legal fees pursuant to § 362(k) of the Bankruptcy Code for the stay violations and under the Court's general supervisory power for contempt of the confirmation order.

In their Motion for Contempt and Sanctions for Violation of the Automatic Stay, the Doolans are seeking rulings by the Court holding Derry (1) in contempt for violation of the automatic stay; (2) liable for actual damages to be determined by the Court, including attorney's fees and costs; and (3) liable for punitive damages.  In the Doolan case, the Court has before it the Doolans' motion for contempt, the objection by Derry, and several memoranda of law.  No motion for summary judgment has been filed by the parties in that case.  Neither have the parties submitted their dispute for decision on a stipulated record.  However, neither the Doolans, nor Derry, objected to the motion filed by Gaff to join her case with their dispute.  In addition, the motion and objection reflect agreement of many facts, including the documents used by Derry in execution of its lien for real estate taxes.  Accordingly, the Court deems the Doolans and Derry to have asked the Court to review their pleadings as a motion for summary judgment by the Doolans based upon the undisputed factual record contained in their respective pleadings.

Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to the Gaff adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, and the Doolans' contested matter by Federal Rule of Bankruptcy Procedure 9014, a summary judgment motion should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Genuine," in the context of Rule 56(c), "means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party."  Rodriquez-Pinto v. Tirado-Delgado, 982 F.2d 34, 38 (1st Cir. 1993) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)).  "Material," in the context of Rule 56(c), means that the fact has "the potential to affect the outcome of the suit under the applicable law."  Nereida-Gonzalez v.

8

Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).  Courts faced with a motion for summary judgment should read the "record in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor."  Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 581 (1st Cir. 1994).

### A.    Gaff's Motion for Summary Judgment

Gaff's adversary proceeding springs from actions taken by Pembroke under New Hampshire law to maintain the perfection of prepetition liens for unpaid property taxes which Gaff contends violate the automatic stay imposed under federal bankruptcy law for the protection of debtors and the orderly payment of claims.  On December 11, 2007, Gaff filed a chapter 13 bankruptcy petition.  At the time of filing, Gaff owed Pembroke property taxes for 2006 and 2007.  Prior to her bankruptcy filing, Pembroke had executed a tax lien for the 2006 taxes, but not the 2007 taxes.  On December 28, 2007, Pembroke filed a proof of claim for unpaid property taxes for those years.  On January 7, 2008, Pembroke sent Gaff a Notice of Tax Delinquency followed by a Notice of Impending Tax Lien on February 5, 2008.  The Notice of Tax Delinquency noted that "[t]o avoid initiation of the tax lien process and associated additional expenses, payment in full must be made."  The Notice of Impending Tax Lien stated that "the tax lien will entitle the Town to legal interest in the property unless, within two (2) years of the execution of the tax lien, the property is redeemed by payment of the amount due plus all accrued interest and costs."  Finally, on March 10, 2008, Pembroke executed a tax lien on Gaff's property for the unpaid 2007 taxes.

On February 14, 2008, the Court confirmed Gaff's chapter 13 plan.  Pembroke received proper notice of the plan and the confirmation hearing, but did not object or appear.  The plan pays Pembroke's arrearage over five years without interest.  Any payments outside the plan are

applied to taxes going forward first, then to the arrearage.  After confirmation, Pembroke

executed a tax lien for unpaid 2007 real estate taxes.  Gaff has remained the owner of the

property and made payments for 2008 and 2009 property taxes.  However, Pembroke

erroneously applied these payments towards the 2006 and 2007 arrearage that is supposed to be

cured by the plan.  Pembroke concedes that it applied the payments to the wrong year.  As a

result of this "clerical error," Pembroke sent notices for unpaid taxes in winter of 2009 and 2010

when in fact those taxes were paid.  Pembroke also added interest to the prepetition arrearage, in

violation of the provisions of the confirmed plan.  On January 29, 2010, Gaff appeared at the tax

collector's office to discuss her account.  According to the tax collector's affidavit, Gaff became

visibly upset and stormed out of the office while the tax collector tried to explain that the town

would cure the error.  Finally, Gaff filed a complaint claiming violation of the automatic stay for

notices sent by Pembroke for 2007 taxes and misapplication of postpetition tax payments as well

as contempt of the final confirmation order.

### 1.      Stay Violations Relating to Prepetition Taxes (Count I)

The dispute between Gaff and Pembroke involves the scope of the exceptions to the

automatic stay regarding the collection of taxes.  State law requires a tax collector to provide to

the owner of real estate a summary of all uncollected and unredeemed taxes against their real

estate.  NH RSA 76-11-b.[3]  Furthermore, in order to perfect the inchoate lien for real estate taxes,

New Hampshire law requires a four step process.  First, the tax collector must provide a notice of

impending lien.  NH RSA 80:60.  Second, an affidavit of the execution of the lien in favor of the

municipality where the property is located must be delivered to the municipality on the day

---

[3]  Although a tax collector is required to provide this summary, it is not one of the
necessary steps in executing the tax lien procedures.  See NH RSA 80:59-86.  There is no
apparent sanction for failure to provide the required summary.

following the last date for payment of taxes as stated in the notice.  NH RSA 80:61 and 80:63.

Third, within thirty days after executing the tax lien to the municipality, the tax collector must

record in the registry of deeds for the county where the real estate is located a statement

containing the facts relating to each parcel of real estate on which a lien has been executed.  NH

RSA 80:64.  Finally, within forty-five days from the date of the execution of the tax lien, the tax

collector must identify and notify all persons holding mortgages of record in the registry of

deeds of the facts relating to the execution of the lien.  NH RSA 80:65.

### a.        The Notice of Arrearage - NH RSA 76:11-b

Pembroke sent a Notice of Tax Delinquencies and Unredeemed Tax Liens dated January

7, 2008 to Gaff as required by NH RSA 76:11-b.[4]  The notice reflected an unredeemed tax lien for

2006 taxes in the amount of $2,627.61 and unpaid 2007 taxes in the amount of $6,275.00.  The

notice contained a summary of unpaid and unredeemed taxes as specified under the statute.[5]  The

notice also stated that "[t]o avoid the initiation of the tax lien process and associated

additional expenses, payment in full must be made by January 25, 2008."[6]  The 2007 taxes were

due and payable prior to December 11, 2007, the date Gaff filed her chapter 13 petition.

_____

[4]  Gaff's bankruptcy petition was filed and her chapter 13 plan was confirmed under the name of "Lori Mader," and the notice was addressed to her under that name.  However, she filed a notice of name change with the Court on June 15, 2010 (Doc. No. 86) to reflect a Certificate of Name Change issued by Merrimack County Probate Court on June 7, 2010.  No party has contended that the notice was improperly addressed or that she is not the person identified in the notice.

[5]  The notice dated January 7, 2008, also list taxes for 2006 for which a tax lien had apparently been executed prepetition.  Gaff has made no claim that the inclusion of this information violated the automatic stay.

[6]  The Court notes that the notice of delinquent taxes required under NH RSA 76:11-b is neither a condition precedent nor a part of the tax lien procedures under New Hampshire law.  See NH RSA 80:59-86.

Pembroke claims that its action was not a violation of the automatic stay because of the exception provided in § 362(b)(9)(B) of the Bankruptcy Code.  Gaff agrees that giving the notice of arrearage required under NH RSA 76:11-b is excepted from the automatic stay.  However, she contends that the notice of January 7, 2008, went beyond the narrow exception in the Bankruptcy Code when it attempted to collect or enforce the prepetition tax obligation for 2007.  Gaff objects to language in the notice stating: "According to RSA 80:59 any outstanding 2007 tax not paid in full, including interest and costs, will be subject to the tax lien process.  To avoid the initiation of the tax lien process and associated additional expenses, payment in full must be made by January 25, 2008."  Gaff argues that this language goes beyond the requirements of NH RSA 76:11-b and is outside of the exception to the automatic stay for notices of tax deficiencies because it attempts to coerce her to pay prepetition taxes by threatening the commencement of the tax lien procedure in violation of the automatic stay imposed by § 362(a)(6).

Pembroke and the interveners argue that in addition to the exception in § 362(b)(9)(B), prior proceedings in this Court in In re Pub. Serv. Co. of New Hampshire, Bk. No. 88-00043 (Bankr. D.N.H. 1988), as well as the decision in Jennings v. Town of Greene (In re Jennings), 304 B.R. 8 (Bankr. D. Me. 2004), demonstrate that the delivery of the notice on January 7, 2008, did not violate the automatic stay.  They also argue that even if the demand for payment in the notice is outside the scope of § 362(b)(9)(B), it did not violate the stay because it did not constitute harassment or coercion of Gaff.  See In re Pratt, 462 F.3d 14, 19 (1st Cir. 2006) (citing In re Diamond, 346 F.3d 224, 227 (1st Cir. 2003)); Jamo, 283 F.3d at 399.

This Court's previous decisions in the Public Service case are not helpful to Pembroke. In 1988, the language of § 362(b)(3) only referred to "any act to perfect an interest in property" to the extent that such interest would be superior to the rights of a trustee.  The language did not

explicitly include the right to maintain or continue the perfection of an interest.  Accordingly, the

decision in the <u>Public Service</u> case did not involve a dispute between the debtor and any city or

town over the then applicable tax sale procedures under state law beyond the question of whether

the language in § 362(b)(3) permitted a New Hampshire tax collector to follow state law

procedures to maintain its status as a secured creditor without obtaining relief from the automatic

stay.  The Court in <u>Public Service</u> did not address the exception in § 362(b)(9) and did not

examine the content or effect of the procedures used by any of the towns in maintaining their

liens for taxes.  In that case, the court only ruled that § 362(b)(3) provided an exception to the

automatic stay to permit cities and towns to maintain liens for taxes.  The decision in <u>Public

Service</u> was subsequently codified by the 1994 amendments to the Bankruptcy Code.[7]  Therefore,

any exception to the automatic stay for Pembroke's actions must be found in the current statutory

language, not the <u>Public Service</u> case.

 Similarly, the facts in <u>Jennings</u> limit its value to Pembroke as authority in this proceeding.

In <u>Jennings</u>, the debtors conceded that the mailing of the notices by the town did not violate the

automatic stay.  <u>Jennings</u>, 304 B.R. at 9-10.  Moreover, the court in <u>Jennings</u> found that the

demand for payment in the notices was excepted from the automatic stay by § 362(b)(3) because

it was required under applicable state law and was an essential component of the process to

perfect a tax lien.  <u>Id</u>. at 12.  It was because the notices were held to be within the exception to the

automatic stay under § 362(b)(3) that the court had to address whether the language in the notices

violated the stay against postpetition collection of prepetition debt because it was coercive or

harassing.  <u>Id</u>. at 10.  The court in <u>Jennings</u> stated that "[e]ven were I to assume the tenor of the

---

 [7]  The addition of acts to "maintain or continue the perfection of" an interest, to the extent
that such interest would be superior to the rights of a trustee, was added to § 362(b)(3) by section
204 of the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, effective October 22, 1994.

statutory notice's language could convert lawful action to unlawful, the notice before me is not so coercive or harassing as to violate the stay." Id. at 13.  Thus, the decision in Jennings turned on whether actions taken outside of otherwise lawful conduct may violate the stay.  In this case, Gaff contends that sending a hypothetical notice under the provisions of NH RSA 76:11-b would be excepted from the stay, but that the notice sent to her went beyond the exception.

The parties agree that § 362(b)(9)(B)'s exception permits the delivery of the statutory notice of arrearage pursuant to NH RSA 76:11-b.  The January 7, 2008, notice contains the information required by applicable state law for a notice of deficiency.  However, the notice also contains the following language, not required by NH RSA 76:11-b:

> According to RSA 80:59 any outstanding 2007 tax not paid in full, including interest and costs, will be subject to the tax lien process.  To avoid initiation of the tax lien process and associated additional expenses, payment in full must be made by January 25, 2008.  PLEASE CALL THE TAX OFFICE FOR INTEREST AMOUNT DUE.

(emphasis in the original).  The language does not mention any exception for taxpayers in a bankruptcy proceeding.  Contrary to the arguments of Pembroke, and the interveners, this additional language goes beyond simply giving notice of tax deficiency and therefore is outside the narrow exception of § 362(b)(9)(B).  Since the demand for payment is not excepted, it is prohibited by § 362(a)(6).

Pembroke's claim that the notice was not improperly coercive or harassing is irrelevant to the Court's decision.  Lawful actions may violate the automatic stay, or the discharge injunction, if they are improperly coercive or harassing.  See Pratt, 462 F.3d at 19.  However, actions that do violate the automatic stay are not lawful simply because they do not coerce or harass a debtor.  See H & H Beverage Distrib. v. Dep't of Revenue of Pennsylvania, 850 F.2d 165, 167 (3d Cir. 1988), cert. denied 488 U.S. 994 (1988) (governmental unit may issue a notice of tax deficiency

14

but may not attempt to collect a prepetition tax).  In this case, the demand for payment of the

2007 taxes in the January 7, 2008, notice was outside of the narrow exception from the automatic

stay in § 362(b)(9), and violated the automatic stay provided in § 362(a)(6).  Rosas v. Monroe

Cnty. Tax Claim Bureau, 323 B.R. 893, 899 (Bankr. M.D. Pa. 2004); Headrick v. Georgia (In re

Headrick), 203 B.R. 805, 810 (Bankr. S.D. Ga. 1996).  The degree of coercion or harassment, or

the good faith or bad faith of the Pembroke tax collector, or whether Pembroke's actions were

intended to violate the stay or were a mistake, may be relevant to a determination of damages, but

are not determinative of whether the automatic stay was intentionally violated.  Fleet Mortg.

Group, Inc. v. Kaneb (In re Kaneb), 196 F.3d 265, 268-69 (1st Cir. 1999).

### b.        Execution of Tax Lien Procedures

The first step in executing a tax lien in order to maintain the perfection of the original lien

is sending notice of the impending lien to the person against whom the tax was assessed.  State

law dictates that the notice (i) state the name of the person against whom the tax was assessed; (ii)

describe the property committed to the tax collector for collection of taxes; (iii) state the date and

time on which the last payment will be accepted; and (iv) state the amount of the tax, interest, and

costs to the date of executing the lien.  NH RSA 80:60.

Pembroke sent a Notice of Impending Tax Lien dated February 5, 2008, to Gaff as the

first step by Pembroke to execute a tax lien for unpaid taxes for the 2007 tax year in the amount

of $6,653.30.  The 2007 real estate taxes were due before December 11, 2007, the day Gaff filed

her bankruptcy petition, so they were a prepetition debt.  The notice contained the information

required under state law.  Id.  However, the notice also contained the following additional

language not required under state law:

> IF A LIEN IS PLACED IT WILL BE LISTED ON YOUR CREDIT
> HISTORY.
>
> If the total amounts including interests and costs are not paid before 4 P.M.
> on Monday, March 10, 2008 a "Real Estate Tax Lien" will be executed to
> the Town of Pembroke and recorded in Merrimack County Registry of
> Deeds.  This tax lien will entitle the Town to legal interest in the property
> unless, within two (2) years of the execution of the tax lien, the property is
> redeemed by payment of the amount due plus all accrued interests and
> costs.  If payment is made before March 10, 2008 please call my office at
> 603-485-4747 extension 208 for the correct amount due.

(emphasis in the original).  This additional language goes beyond the requirements of the tax lien

procedure under state law and is not necessary to maintain an existing lien for taxes.  Id.  This

language demands payment of the 2007 taxes within two years or the debtor will lose her

property.  The language does not mention any exception for taxpayers in a bankruptcy

proceeding.  Such statements violate the automatic stay imposed by § 362(a)(4) and (a)(6) and are

not permitted under any exception to the automatic stay.

Pembroke claims that its actions were not a violation of the automatic stay because of the

exception provided in § 362(b)(3) of the Bankruptcy Code.  However, § 362(b)(3) only excepts

from the automatic stay "any act to perfect, or maintain or continue the perfection of, an interest

in property to the extent that the trustee's rights and powers are subject to such perfection under

section 546(b)" of the Bankruptcy Code.  Rosas, 323 B.R. at 899.  Gaff acknowledges that

applicable state law requires town tax collectors to follow certain procedures to maintain a lien

for prepetition real estate taxes and that § 362(b)(3) contains an exception to the automatic stay

for such actions.  However, she contends that the notice of February 5, 2008, went beyond the

narrow exception in the Bankruptcy Code.  She contends that the procedure under state law only

requires identification of the property and the property owner, plus notification to the property

owner of the amount due on the last day to pay and the last date for payment.  See NH RSA

16

80:60. The additional language quoted is not mandated by NH RSA 80:60 and therefore goes beyond an act to maintain or continue perfection of a lien. Hence, the exception in § 362(b)(3) is not applicable to the additional language.

On March 10, 2008, Pembroke completed the second step in the tax lien procedure by delivery of an affidavit of execution of a tax lien. NH RSA 80:61.[8] As of the date of execution of the tax lien, the statutory interest rate on the unpaid taxes increased from 12% to 18%. See NH RSA 76:13 (12% interest after due date) and NH RSA 80:69 (18% interest after execution of a tax lien). The increase in the statutory interest rate is not a violation of the automatic stay because it occurs by operation of law once the tax lien is executed. However, collection of the higher interest rate through the application of plan payments by the trustee, or postpetition payments by a debtor, at the higher rate on prepetition tax debt is not part of the process for perfecting or maintaining a tax lien. Therefore, any such action would violate the stay under § 362(a)(5).[9]

The NHTCA argues that Congress has recognized the importance of real estate taxes to local communities when in 1994 it amended the Bankruptcy Code to overrule certain judicial decisions on the scope of § 362(b)(3) by adding an exception from the automatic stay regarding the creation or perfection of liens for postpetition taxes.[10] Prior to this amendment, some courts

___

[8]  The summary judgment record is silent on any other steps taken by the tax collector and Pembroke in executing the tax lien for 2007 taxes. The Court assumes that it followed the remaining procedures required under state law to execute a tax lien by filing a report of the execution of the tax lien in the registry of deeds (NH RSA 80:64) and notifying persons holding liens on Gaff's property of the execution of the lien (NH RSA 80:65 & 66). However, for the reasons set forth in the opinion, those actions do not impact the Court's ultimate decision.

[9]  The Court notes that a town may require a plan to pay the statutory interest rate as of the calendar month the plan is confirmed, even if that rate increased postpetition. 11 U.S.C. § 511.

[10]  Section 362(b)(18) was added to the Bankruptcy Code by section 401 of the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394.

had held that the exception in § 362(b)(3) applied to prepetition liens, but not to postpetition tax liens. The NHTCA cites to the legislative history of the 1994 amendment to § 362(b) which states:

> Local governments rely on real property taxes to constitute one of their principal sources of revenue. These taxes are, in turn, typically secured by statutory liens. Both the property owner and any mortgage holder recognize that their interest in real property is subject to the local government's right to collect such property taxes. However, several circuit courts have held that the automatic stay prevents local governments from attaching a statutory lien to property taxes accruing subsequent to a bankruptcy filing. See, e.g., In re Paar Meadows, 880 F.2d 1540 (2d Cir. 1989), cert. denied, 110 S.Ct. 869 (1990); Markaroff v. City of Lockport, 916 F.2d 890 (3d Cir. 1990). These decisions create a windfall for secured lenders, who would otherwise be subordinated to such tax liens, and significantly impair the revenue collecting capability of local governments. This section overrules these cases and allow local governments to utilize their statutory property tax liens in order to secure the payment of property taxes.

140 Cong. Rec. H 10,771 (October 4, 1994) (statement of Representative Brooks). The NHTCA contends that Congress intended the 1994 addition of § 362(b)(18) to provide the same treatment for taxes accruing postpetition as case law had applied to prepetition taxes, thereby affirming the treatment of prepetition tax claims under the exception in § 362(b)(3). The Court agrees with the NHTCA that Congress has clearly affirmed the exception to the automatic stay which permits the perfection and the continuation of perfection of statutory liens for the collection of both prepetition and postpetition real estate taxes. However, the exception is expressly limited to the perfection or the continuation of perfection of the statutory lien, not demands for payment or other attempts to collect the tax. The inescapable inference from the history of Congressional action with regard to such statutory liens is that acts to perfect and to continue the perfection of property tax liens do not violate the automatic stay, but acts to collect or enforce such liens remain subject to the automatic stay.

### c.      Avoidance of Stay Violations

The Towns and the interveners in these cases contend that they are not seeking to collect unpaid prepetition taxes or to deed properties subject to a tax lien without relief from the stay. They contend that they are only employing that part of the statutory procedure that maintains their tax lien as permitted by § 362(b)(3) and (b)(18) of the Bankruptcy Code.  While tax collectors may not intend to pursue those portions of the statutory tax collection procedures subject to the automatic stay, it is undisputed that the notices that they send to debtors in bankruptcy proceedings are indistinguishable from those sent to property owners who are not in bankruptcy. In fact, the summary judgment record strongly suggests that Pembroke does not recognize any distinction between proceedings against property owners in bankruptcy and those not in bankruptcy.  The summary judgment record includes answers to interrogatories by the Pembroke tax collector dated August 18, 2010, which include the following:

> *5.  Please describe the Town of Pembroke's procedures and/or guidelines regarding application of post-petition property tax payments when a property owner files for Chapter 13 bankruptcy protection and the Court confirms a Chapter 13 plan which includes payment of pre-petition real estate property taxes.*

> **ANSWER:**

> Any payments received for taxes due are applied to the most outstanding year of taxes unless I am instructed otherwise.

> *6.  Please describe the lien procedure for the Town of Pembroke for unpaid real estate property taxes for a property owner who has filed for Chapter 13 bankruptcy protection.*

> **ANSWER:**

> The lien procedure is the same for all taxpayers regardless of bankruptcy filings. In January a delinquency letter is mailed to every taxpayer in Pembroke listing all outstanding taxes due as of the date of the letter.  In February a Tax Lien Notice is sent to any taxpayer who has outstanding taxes for the prior year.  In March, a tax

lien is perfected for outstanding taxes, interest and costs and recorded at the Merrimack County Registry of Deeds.

*7. Please describe the rate of interest charged for unpaid property taxes, when interest begins to accrue, and how and when the interest rate changes. Please describe how this procedure changes, if at all, if a real estate property owner files for Chapter 13 bankruptcy protection.*

**ANSWER:**

Property tax interest is charged at 12% per annum. Interest begins to accrue the day after the bill is due. The interest rate goes up to 18% per annum when the tax lien is perfected on the property. The interest rate changes if the bankruptcy court orders a change.

The answer to interrogatory number 5 reflects a lack of understanding of the requirements for the application of payments under a plan on account of prepetition taxes and payments by a debtor for postpetition taxes. See Burrell v. Town of Marion (In re Burrell), 346 B.R. 561, 570-71 (B.A.P. 1st Cir. 2006). The answer to interrogatory number 6 reflects the statutory lien procedure and the procedures followed in this case, but does not reflect any recognition by Pembroke that there is any limitation on what the town may do in tax enforcement proceedings against bankruptcy debtors and their property. The answer to interrogatory number 7 suffers from the same problems as the answer to interrogatory number 5 as it fails to indicate any understanding of the impact of a pending bankruptcy proceeding or a confirmed plan on the application of payments or the accrual of interest. Id.

The difficulty for Pembroke, and all other cities and towns in New Hampshire, is that the statutory procedure for maintaining the perfection of liens for unpaid real estate taxes includes procedures for collection of such unpaid taxes. See NH RSA 80:69 and 80:76. These collection activities include the commencement of a two-year redemption period, with delivery of a tax deed if unredeemed, and an increase in the interest rate on the unpaid obligation. These collection

20

activities are not excepted from the automatic stay.  11 U.S.C. § 362(a)(4), (5) and (6).  The

exception from the automatic stay is limited to acts to "perfect, or to maintain or continue the

perfection of" certain interests in property.  11 U.S.C. § 362(b)(3).  Pembroke, Derry and the

interveners do not argue to the contrary.

They contend that they have no intent to take collection actions without first obtaining

relief from the automatic stay.  Of course, the problem is that debtors, who receive notices that are

indistinguishable from those sent when a town intends to commence a collection action, may not

discern what a town intends and does not intend to do.  The question is whether, and how, a real

estate tax collector in New Hampshire may maintain the perfection of liens for unpaid prepetition

and postpetition taxes without violating the automatic stay.

The procedure used by Pembroke which sends the same notices and forms to all

delinquent taxpayers, regardless of whether they are involved in a bankruptcy proceeding, and

includes language indicating that property interests may be lost if payment is not made by

prescribed deadlines does not suffice.  However, a town taking no action could lose its statutory

lien and thereby provide a windfall for debtors and third parties holding liens or other interests in

the property taxed.  Because the current New Hampshire statutory procedure includes both lien

maintenance and collection actions within its parameters, the only options appear to be (1)

eliminate all language not necessary under state law to maintain the lien for unpaid property taxes

or (2) retain the current practices and include with all tax delinquency and tax lien notices, sent to

debtors in bankruptcy proceedings, and other persons, with an interest in the property subject to

the tax, a notice that (a) the tax collector or town is only acting to maintain the perfection of its

statutory lien and is not attempting to collect any delinquent property tax debt, (b) the tax

collector or town will not deliver a tax deed or impair a debtor's interest in the property, (c) the

21

tax collector or town will not increase the interest rate on unpaid property taxes without seeking appropriate bankruptcy court approval, and (d) the provisions of federal bankruptcy law may affect the rights of the town under state law, as long as the debtor is in bankruptcy. Detailed explanations are neither necessary nor appropriate since tax collectors may not provide legal advice and the impact of bankruptcy law may vary from case to case. However, tax collectors need to recognize the limitations imposed on them by the Bankruptcy Code and need to advise debtors that such limitations exist.[11]

### 2. Stay Violations Relating to Application of Postpetition Tax Payments (Count II)

Pembroke admittedly applied postpetition real estate tax payments to prepetition tax liabilities. Application of postpetition payments to prepetition obligations of a chapter 13 debtor is simply collection of a prepetition debt outside of a plan of reorganization prohibited by § 362(a)(6) of the Bankruptcy Code. There is no dispute that Pembroke intended to apply Gaff's postpetition payments to the oldest (i.e., prepetition) tax obligations first and that it was aware of the bankruptcy proceeding. Therefore, it actions were willful and constitute willful violations of the automatic stay. Kaneb, 196 F.3d at 268-69.

### 3. Contempt of the Confirmation Order (Count III)

Gaff contends that the actions of Pembroke in applying payment of postpetition taxes to prepetition claims, and the payment of interest on those prepetition taxes, were actions in contempt of the order confirming her plan of reorganization. Pembroke admittedly applied

---

[11] The Court takes no position on the exact wording of such notices or whether they need to be part of the forms of notices sent to all taxpayers or whether they need only be included with notices sent to property owners in bankruptcy. The important point is for tax collectors to recognize the limitations that they acknowledge exist and, if they wish to use the current language, to advise debtors of the existence of such limitations.

postpetition real estate tax payments to prepetition tax liabilities.  Such actions failed to recognize

both the distinction in bankruptcy proceedings between prepetition and postpetition obligations as

well as the provisions of the confirmed chapter 13 plan.  The court in In re Rathe, properly

characterized the difference between payments made inside a confirmed plan to cure an arrearage

and payments made outside the plan for postpetition obligations:

> the purpose of a Chapter 13 Plan is to allow a debtor to pay arrears during the
> pendency of the plan while continuing to make payments at the contract rate.
> Payments made during the pendency of the Chapter 13 plan should have been
> applied by [the lender] to the current payments due and owing with the arrearage
> amounts to be applied to the back payments.

114 B.R. 253, 257 (Bankr. D. Ida. 1990).  If postpetition payments are applied in such a manner,

the creditor must cure the accounting error and restore the debtor to its pre-default status.  Burrell,

346 B.R. at 571.  Gaff's chapter 13 plan pays her tax arrearage for 2006 and 2007 property taxes

to Pembroke over the life of the plan without interest.[12]  Pembroke accrued interest on the

arrearage and also applied payments for 2008 and 2009 taxes to that arrearage.  Pembroke

concedes both errors.  When Pembroke did not apply payments in accordance with the terms of

Gaff's confirmed chapter 13 plan, its actions were in contempt of the confirmation order.

Pembroke argues that the mistakes were not willful and that it offered to reallocate the expenses

however Gaff wished.  A willingness to correct past mistakes does not cure the nature of

Pembroke's conduct.  However, it may be relevant to a determination of any sanctions to be

imposed for such conduct.

--------

[12]  The treatment of Pembroke's secured tax claim under Gaff's chapter 13 plan is not an issue in this case.  Gaff's chapter 13 plan dated December 7, 2007 (Doc. No. 6) proposed to treat Pembroke's prepetition tax claim as a priority unsecured tax claim to be paid without interest. The plan and a notice of the confirmation hearing were served on the Pembroke tax collector and the plan was confirmed on February 14, 2008, without objection by Pembroke.  The confirmation order was not appealed and Pembroke is bound by the provisions of the confirmed plan.  United Student Aid Funds, Inc. v. Espinosa, 130 S.Ct. 1367, 1377 (2010).

23

### 4.      Damages

Gaff seeks a hearing to determine damages for Pembroke's willful violation of the automatic stay and contempt of the order confirming her chapter 13 plan.  The Bankruptcy Code allows individual debtors injured by a creditor's willful violation of the automatic stay to "recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, . . . punitive damages."  11 U.S.C. § 362(k)(1); <u>Kaneb</u>, 196 F.3d at 268-69.  However, the Bankruptcy Code expressly prohibits an award of punitive damages against any governmental unit.  11 U.S.C. § 106(a)(3).  Accordingly, any hearing on damages shall be limited to actual damages, attorneys' fees, and costs.

### B.      Doolans' Motion for Contempt and Sanctions for Violation of the Automatic Stay

The first billing for the 2009 real estate taxes was due and unpaid on the date the Doolans filed their chapter 13 petition on October 13, 2009.  One month later, the balance of the 2009 real estate taxes became due and Derry filed a secured claim in the Doolans' bankruptcy case.  After notice to Derry and a hearing, the Doolans' chapter 13 plan of reorganization was confirmed on January 5, 2010, without objection.  The plan proposed to pay the 2009 real estate taxes owed to the town as an unsecured priority claim with interest at twelve percent.[13]  The confirmation order became final on January 19, 2010.  On January 22, 2010, Derry sent to the Doolans the required

---

[13]  The treatment of Derry's secured claim for 2009 taxes in the Doolan's chapter 13 plan is not an issue in this case.  On the date the Doolans filed their chapter 13 petition, and on the date their chapter 13 plan was confirmed, Derry held a fully secured claim for the 2009 real estate taxes.  However, after notice and a hearing, Derry did not object to its treatment and the plan was confirmed.  Therefore, Derry is bound by the terms of the confirmed chapter 13 plan. <u>Espinosa</u>, 130 S.Ct. at 1377 (2010).

24

notice of arrearage under NH RSA 76:11-b for the 2009 real estate taxes.[14]  The notice satisfied

the statutory requirement to notify the Doolans of the uncollected real estate taxes due on their

property.  The notice also contained the following additional language:

> To avoid initiation of the tax lien process as required by State statute and associated additional expense of $18.00 Certified Lien Notice Fee, you should pay the total amount due (tax and interest) on or before March 25, 2010 for all levies listed not previously liened.

> In response to the notice, the Doolans' attorney sent Derry a letter claiming the notice was

a collection action in violation of the automatic stay and to cease any further activity.  Derry's tax

collector responded in writing stating:

> For practicable purposes while a bankruptcy case is pending all steps short of those connected with giving a tax collector's deed may be taken without the bankruptcy court's approval in order to maintain the security of the first priority lien for real estate taxes.

> Therefore, Mr. Doolan will continue to receive correspondence in regard to his outstanding real estate taxes as [sic] prescribed by NH RSA 80:59, although he is protected from the Tax Deeding process the steps of lien execution must be perfected.

On March 26, 2010, with the real estate taxes remaining unpaid, Derry took the first step in

executing a tax lien by sending the debtor a Notice of Impending Tax Lien under NH RSA 80:60.

The document notified the Doolans that if full payment were not made by May 4, 2010, Derry

---

[14]  The notices in the record are addressed solely to Mr. Doolan.  The record does not disclose whether Mrs. Doolan holds a legal interest in the property subject to Derry's tax lien. However, Mrs. Doolan holds at least a homestead interest in the property, and is a person with an interest in tax liens on the property in question as well as the redemption of tax liens, even if she does not hold a legal interest of record in the property.  See e.g., Bursey v. Town of Hudson, 143 N.H. 42, 45 (1998) (holding that a party without legal title to real estate held an equitable interest under a divorce decree sufficient to constitute a legally protectable property interest in the property).  Accordingly, in this opinion, the Court shall deem the notices issued by the Derry tax collector as actions taken against each joint debtor.

would execute a tax lien on the property.  The notice also contained the following additional

language:

> If the total amounts are not paid before the date stated above, a "**Real Estate Tax
> Lien**" will be executed to the Town of Derry and recorded at the Rockingham
> County Registry of Deeds.  This tax lien will entitle the Town of Derry to legal
> interest in the property described above unless, within two (2) years of the
> execution of the tax lien, the property is redeemed by payment of the amount listed
> below, plus all accrued interest and costs.

(emphasis in the original).  The notice also stated "[t]he amount due as of May 4, 2010 including

interest and cost is $3,457.31."  The Doolans' attorney sent another cease and desist letter to

Derry on April 19, 2010.  On May 7, 2010, Derry executed a tax lien with the registry of deeds.

Finally, the Doolans filed the motion at issue for sending the notices and executing the tax lien.

Derry contends that it was only acting to maintain its existing prepetition first priority lien

which is permitted by the exception to the automatic stay provided in § 362(b)(3), (b)(9) and

(b)(18) of the Bankruptcy Code.  Derry contends that its actions were clarified by the tax

collector's letter of February 19, 2010 indicating Derry's intent in following the tax lien

procedures.  The Doolans contend that the notices sent by Derry contained more than the town

was required to do under state statutory tax lien procedures when it threatened loss of the

Doolans' interest in the property, demanded payment within thirty-nine days, and sought to

increase the interest rate contrary to the terms of the confirmed plan.  The Doolans contend that

these actions brought Derry outside any exception to the automatic stay.

### 1.      Violation of the Automatic Stay

The January 22, 2010, notice of arrearage contained additional language substantially

similar to the notice sent by Pembroke and discussed in section III.A.1.a above.  The additional

language is a demand for payment of both a prepetition tax claim for the first half of the 2009

26

taxes and the postpetition claim for the second half of the 2009 taxes.  The language does not

mention any exception for taxpayers in a bankruptcy proceeding.  Contrary to the statements in

the Derry tax collector's letter to counsel for the Doolans, this additional language goes beyond a

simple notice of tax deficiency.  To the extent that the January 22, 2010, notice contains a demand

for payment of prepetition taxes, it is not protected by the exceptions to the automatic stay in §

362(b)(3) and (b)(18) for tax deficiency notices and did violate the automatic stay imposed by §

362(a)(6).

On March 26, 2010, the tax collector for Derry sent a notice of impending tax lien as the

first step in the statutory procedure to maintain the prepetition inchoate lien for the 2009 real

estate taxes.  The notice contained additional language substantially identical to the language in

the similar notice of tax lien sent by Pembroke and discussed in section III.A.1.b above.  This

additional language goes beyond the requirements of the tax lien procedure under state law and is

not necessary to maintain an existing lien for taxes.  NH RSA 80:60.  This language demands

payment of the 2009 taxes within two years or the debtors will lose their property.  The language

does not mention any exception for taxpayers in a bankruptcy proceeding.  Such statements

violate the automatic stay imposed by § 362(a)(4) and (a)(6) and are not permitted under any

exception to the automatic stay.

On May 7, 2010, Derry completed the second step in the statutory procedure to maintain

the prepetition inchoate lien for the unpaid portion of the 2009 real estate taxes by recording a

notice of lien in the Rockingham County Registry of Deeds.[15]  The recording of the notice of tax

---

[15]  The March 26, 2010 Notice of Impending Tax Lien stated the amount due as of May 4, 2010, as $3,457.31.  The notice of lien recorded on May 7, 2010, was for $3,181.62 in taxes, or $275.68 less than the March 26, 2010, notice.  The record contains no explanation for this difference, but the reason is not material to the decision in this case.

lien was made in accordance with the statutory procedure to maintain the perfection of the prepetition lien for unpaid 2009 taxes. Accordingly, the recording of the tax lien did not violate the automatic stay because of the exceptions in § 362(b)(3) and (b)(18).

### 2. Actual and Punitive Damages

The Doolans seek damages for Derry's willful violation of the automatic stay. The Bankruptcy Code allows individual debtors injured by a creditor's willful violation of the automatic stay to "recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, . . . punitive damages." 11 U.S.C. § 362(k)(1); Kaneb, 196 F.3d at 268-69. However, the Bankruptcy Code expressly prohibits an award of punitive damages against any governmental unit. 11 U.S.C. § 106(a)(3). Accordingly, any hearing on damages shall be limited to actual damages, attorneys' fees and costs.


## IV. PROSPECTIVE APPLICATION OF DECISION

The Court is mindful that this decision impacts long standing practices by all cities and towns in the State of New Hampshire with respect to the collection of unpaid property taxes from persons in bankruptcy proceedings. Pembroke, Derry, and the interveners have documented in the record the efforts by tax collectors in New Hampshire to conduct their tax collection activties within the restrictions of the Bankruptcy Code. The Court is satisfied that the vast majority of cities and towns have acted in a manner that they reasonably believed complied with the provisions of the Bankruptcy Code with respect to maintaining perfection of liens for unpaid real property taxes. The Court is also satisfied that the misapplication of plan payments made by the chapter 13 trustee and postpetition payments made by debtors could not be based on any good faith belief that such actions were in compliance with the law. Accordingly, the Court must

decide whether to apply the decision in this case regarding the scope of the exceptions to the automatic stay under § 362(b)(3), (b)(9) and (b)(18) retroactively or only prospectively.

Federal courts traditionally looked to three factors in determining whether a current decision in a civil case should be given retroactive effect or only apply prospectively.  Those factors are: (1) whether the more recent rule or decision establishes a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) whether, given the history, purpose and effect of the new rule, retroactive application of the rule will further or retard its operation; and (3) whether retroactive application of the new rule could produce substantial inequitable results.  Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 87-88 (1982) (citing Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07 (1971)).  The standard in Chevron has evolved in a number of ways which leave little clarity for courts to follow.  Educ. Credit Mgmt. Corp. v. Mersmann (In re Mersmann), 505 F.3d 1033, 1051 (10th Cir. 2007).  Chevron has been described as being overruled by the decision in Harper v. Virginia Dep't of Tax'n, 509 U.S. 86, 97 (1993).  Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 752 (1995); Mills v. Maine, 118 F.3d 37, 49 (1st Cir. 1997).  The application of a federal law to a particular case does not turn on "whether litigants actually relied on an old rule or how they would suffer from retroactive application of a new one."  Mersmann, 505 F.3d at 1051-52 (citing Harper, 509 U.S. at 95 n.9).  However, equitable principles govern the exercise of bankruptcy jurisdiction.  Mersmann, 505 F.3d at 1052; In re Jarvis, 53 F.3d 416, 419 (1st Cir. 1995) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 389 (1993)); In re Smith Corset Shops, Inc., 696 F.2d 971, 976 (1st Cir. 1982) (citing Bank of Marin v. England, 385 U.S. 99, 87 (1966)).

Since 1988, cities and towns in New Hampshire have taken actions to maintain the inchoate lien for unpaid property taxes under the mistaken impression that an unpublished ruling by this Court in the <u>Public Service</u> case excepted their actions from the automatic stay. However, for the reasons discussed in this decision, the Court in the <u>Public Service</u> case did not review or approve the details of how tax collectors were maintaining liens for unpaid property taxes. In the <u>Public Service</u> case, the Court only held that cities and towns could act to maintain prepetition property tax liens under the language in § 362(b)(3), as it existed in 1988. For twenty-two years, this Court has not had an occasion to rule on the details of how the tax collectors acted to maintain such liens. The absence of any dispute is a reliable indication that debtors and their counsel did not disagree with the view of the cities and towns that their actions did not violate the automatic stay. To that extent, this is a case of first impression, even though it is not articulating a new rule of decision. Revisiting past actions by tax collectors, where there was no contemporaneous objection by a debtor, would not serve any useful purpose.

Accordingly, using the <u>Chevron</u> factors as general principles, and applying general equitable principles of bankruptcy, the Court shall apply the rulings on the scope of the exceptions to the automatic stay under § 362(b)(3), (b)(9) and (b)(18) to these two cases and the case of <u>Hall v. Town of Hudson (In re Hall)</u>, AP 10-1092-LHK.[16] This decision on exceptions to the automatic stay shall apply to all other cases prospectively. Applying the same principles to the decision on contempt of the confirmation order by Pembroke regarding the manner it applied

---

[16] The complaint in <u>Hall</u> was filed on August 3, 2010 and raises many of the same issues involved in these two cases. On October 19, 2010, this court denied a motion by the debtor/plaintiff in <u>Hall</u> to join this proceeding in order not to delay further consideration of the matters in these cases.

postpetition payments to unpaid tax obligations, the Court shall apply the decision retroactively

because it does not announce any new or altered interpretation of federal bankruptcy law.


**V.      CONCLUSION**

For the reasons discussed in this opinion, the Court shall enter a separate order in Gaff v.

Pembroke:

1.      finding that Pembroke violated the automatic stay imposed by §§ 362(a)(4), (a)(5) and (a)(6) when it sent the notice of tax delinquencies dated January 7, 2008, sent the notice of impending tax lien dated February 5, 2008, and misapplied postpetition property tax payments;

2.      finding that Pembroke was in contempt of the Court's order of February 14, 2008, confirming Gaff's chapter 13 plan when it failed to properly apply postpetition payments of unpaid property taxes and imposed interest on unpaid tax obligations; and

3.      scheduling an evidentiary hearing on damages for violation of the automatic stay and sanctions for contempt of the confirmation order.

For the reasons discussed in this opinion, the Court shall enter a separate order in the Doolan

case:

1.      finding that Derry violated the automatic stay imposed by § 362(a)(4) and (a)(6) when it sent the notice of arrearage dated January 22, 2010, and the notice of impending tax lien dated March 26, 2010;

2.      finding that Derry did not violate the automatic stay when it recorded a notice of lien on May 7, 2010; and

3.      scheduling an evidentiary hearing on damages for violation of the automatic stay.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.


Date:   March 14, 2011                    /s/ J.  Michael Deasy
                                          J.  Michael Deasy
                                          Bankruptcy Judge